Douglas A. Buxbaum, Esq.
John M. Fitzpatrick, Esq.
Julia D. Goodkind, Esq.
BUXBAUM, DAUE & FITZPATRICK, PLLC
228 West Main, Suite A
P.O. Box 8209
Missoula, MT 59807
Telephone:  (406) 327-8677
Fax No.:  (406) 829-9840
dbuxbaum@bdf-lawfirm.com
jfitzpatrick@bdf-lawfirm.com
jgoodkind@bdf-lawfirm.com

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| KIMBERLY CARNS, Individually and As Personal Representative of the Estate of CONSTANCE CARNS, and EDWARD CARNS,    Plaintiffs,  -vs-  UNITED STATES OF AMERICA,    Defendant. | Cause No. _____  COMPLAINT |

Plaintiffs, through their attorneys, allege:

1. This is a claim for survival and wrongful death of Constance Carns.  Constance

died of lung cancer on August 7, 2008. Constance's doctors should have diagnosed her lung cancer and began her treatment at least six months earlier. Considering the pathophysiology of her cancer, it is probable that earlier diagnosis would have resulted in diagnosis at an earlier stage, which would have increased her chance of survival. Because of the delay, the cancer was at an advanced stage when diagnosed, and only palliative treatment was available.

2. At all relevant times, Constance was a citizen of the State of Montana and resided in Polson, which is in Lake County, Montana.

3. Constance died in Ronan, Montana, which is also within Lake County, Montana.

4. Kimberly and Edward Carns are Constance's surviving children. Kimberly has been appointed Personal Representative of Constance's Estate in probate proceedings in Lake County District Court.

5. This Court has jurisdiction over this case pursuant to the Federal Tort Claims Act, 28 U.S.C. 2671, *et seq.*, in that the claim arises from the Government's conduct in providing health care services at the Tribal Health Services ("THS") Ronan Medical Clinic in Ronan, Montana. THS is an Indian Health Services (IHS)-funded facility operated by the United States. The negligent acts and omissions that are the subject of this action were committed by the Government's agents and employees while acting within the course and scope of their employment. This Court has exclusive jurisdiction over tort claims brought against the United States pursuant to 28 U.S.C. § 1346(b).

6. The Plaintiffs' claims were filed in writing with the Department of Health and Human Services on January 15, 2009. The United States denied the claims August 20, 2009.

Accordingly, Plaintiffs have appropriately exhausted their administrative remedies.

7.  The acts and omissions giving rise to this claim occurred in Lake County, Montana, which is within the Missoula Division.  Venue is proper in the Missoula Division pursuant to Local Rule 1.11(a)(2).

8.  In early 2007, Constance was evaluated for surgery to repair a bladder condition.  The surgeon referred Constance to her primary care physician, Leeanna Muzquiz, M.D., at THS for an evaluation for operative clearance.

9.  As part of the pre-operative evaluation, a chest x-ray was obtained.

10.  According to her note dated January 29, 2007, Dr. Muzquiz interpreted the chest x-ray as showing clear lung fields with no obvious infiltrates or mass.  In other words, from a pulmonary disease standpoint, Dr. Muzquiz read the film as normal.

11.  According to the report of the radiologist who read the film, it was, in fact, suspicious for lung cancer in the lower lobe of Constance's left lung.  Specifically, the radiologist noted, "There is one questionable nodular density at the <u>left</u> lower lung field."  The radiologist reported that a pulmonary nodule could not be excluded and recommended follow-up views of the chest.

12.  The radiology report was copied to Dr. Muzquiz and placed in Constance's chart.

13.  Dr. Muzquiz did not tell Constance that her chest x-ray showed a suspicious nodule that could represent lung cancer.

14.  Dr. Muzquiz did not order any tests or studies to further evaluate the suspicious pulmonary nodule.

15.   The standard of care required prompt evaluation as recommended by the radiologist.

16.   Over the next few months, Constance saw Dr. Muzquiz and other providers at THS for various medical issues.  On June 28, 2007, Constance had another chest x-ray.  This film showed increasing density in the left lower lobe in comparison with the January 30, 2007 film.

17.   On July 12, 2007, Constance saw Dr. Muzquiz with complaints of a productive cough.  According to the medical record, Dr. Muzquiz reviewed the chest x-ray from June 28, 2007 and ordered a CAT scan of Constance's chest.

18.   Constance had a CAT scan of her chest on July 31, 2007.  The radiologist interpreted that study to show a mass in the lower lobe of Constance's left lung, as well as enlarged lymph nodes in the subcarinal and peritracheal regions, all of which he concluded suggested malignant neoplasm (cancer).

19.   Constance then began seeing cancer specialists in Missoula and was diagnosed with metastatic, high-grade, non-small cell carcinoma of the lung.

20.   By the time it was diagnosed, Constance's lung cancer was at an advanced stage and terminal.  She received palliative chemotherapy with the intent to control, but not cure, the disease.  Constance died from lung cancer on August 27, 2008.

21.  The standard of care required Dr. Muzquiz to inform Constance about and follow-up on the worrisome findings described by the radiologist who read the January 2007 chest x-ray. Failing to do so was negligent.

22. Dr. Muzquiz's negligence allowed Constance's cancer, which was fast growing, to proliferate and progress to high-stage, incurable cancer by the time it was finally diagnosed.

23. Defendant's negligence was a substantial factor in bringing about Constance's wrongful death, deprived Constance of the chance to obtain a cure for her cancer, or to prolong her life through more effective treatment, and permitted the progression and aggravation of a pre-existing medical condition.

24. Plaintiffs seek all damages allowed under Montana law for Constance's wrongful death, survival and loss of chance in amounts to be proved at trial.

WHEREFORE, Plaintiffs seek judgment against the Defendant as follows:

1. For a judgment in such amounts as shall be proven at trial;

2. For costs of this action;

3. For such other relief as the Court deems just.

Dated this 14th day of October, 2009.

 /s/ Douglas A. Buxbaum  
Douglas A. Buxbaum  
BUXBAUM, DAUE & FITZPATRICK, PLLC  
*Attorneys for Plaintiff*